COREY R. WEBER – Bar No. 205912
PHILIP J. BONOLI – Bar No. 188906
RYAN F. COY – Bar No. 324939
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: 818.827.9000
Facsimile: 818.827.9099
E-mail: cweber@bg.law
        pbonoli@bg.law
        rcoy@bg.law

Attorneys for Plaintiff, Social Game Media, Inc,
dba Leverage Game Media

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOCIAL GAME MEDIA, INC. dba LEVERAGE GAME MEDIA, a Canadian corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAMIER MEDIA, a California corporation; and ERIC DAMIER, individually and doing business as MOMENTS IN HISTORY,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. BREACH OF WRITTEN CONTRACT;<br>2. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;<br>3. UNFAIR BUSINESS PRACTICES; AND<br>4. CIVIL EXTORTION<br><br>**[DEMAND FOR JURY TRIAL]** |

Social Game Media, Inc. dba Leverage Game Media ("LGM" or "Plaintiff"), alleges that:

1.     Plaintiff LGM and Defendants Damier Media, a California corporation ("Damier Media"), and Eric Damier individually and doing business as Moments in History ("Damier") are parties to a contract whereby LGM agreed to provide services to Damier Media and Damier for the promotion of Damier Media and/or Damier's sale of digital artwork through social media posts and communications. LGM provided the services through the agreed-upon social media platforms with the exception of Twitter given that LGM's Twitter account had been suspended based

-1-

on issues unrelated to LGM's operation of the Twitter account. LGM is informed and believes and based thereon alleges that following on LGM's promotion of Damier Media and Damier's sale of digital artwork, the sale was successful, resulting in Damier Media and/or Damier obtaining gross sales proceeds of approximately $1.5 million. Pursuant to the agreement between LGM, Damier Media and Damier, Damier Media and Damier were required to pay LGM a commission of 20% of the sales, but breached the agreement and failed to pay any amounts to LGM for LGM's services. Following Damier Media and Damier's default, Damier made veiled threats to LGM and its owners when they contacted Damier Media and Damier as to payment of the amounts due under the agreement. As alleged herein, Damier's threats sent via text messages when LGM followed up as to amounts due including but not limited to stating "I'm the last guy you want to have issues with", "[d]o you recall the messages you sent projects telling them not to disclose your involvement in their project. Those screen shots exist", "[s]ave yourself the headache" and "[s]tay as low key as possible." Damier and Damier Media sent text messages that were intended to exploit the fear of economic loss through the disclosure of materials that Damier and Damier Media inferred would be damaging to LGM, its business and its reputation, and were a wrongful use of fear to obtain an economic benefit.

2. By this action, LGM seeks damages arising from Damier Media and Damier's actions and conduct alleged herein.

## PARTIES

3. Plaintiff LGM is a Canadian corporation, whose principal place of business is, at all times relevant, in Toronto in the Canadian province of Ontario. LGM transacts business in the Central District of California.

4. Defendant Damier is an individual who, at all times relevant hereto, resided in the County of Los Angeles, State of California and whose principal place

2804945

of business is, at all times relevant, was in Los Angeles, California and the Central District of California.

5.     Defendant Damier Media is a California corporation whose principal place of business is, at all times relevant, in Los Angeles, California.  Damier Media transacts business in the Central District of California.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) and/or 28 U.S.C. § 1332(a)(3).  Plaintiff LGM is a Canadian corporation, whose principal place of business is, at all times relevant, in Toronto in the Canadian province of Ontario.  Defendant Damier is an individual, who resides in Los Angeles, California and whose principal place of business is, at all times relevant, in Los Angeles, California.  Defendant Damier Media is a California corporation whose principal place of business is, at all times relevant, in Los Angeles, California. The amount in controversy exceeds $75,000 exclusive of interest and costs.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Damier resides and has his principal place of business in the Central District of California, because Damier Media has its principal place of business in the Central District of California, and because a substantial part of the conduct and acts, including breach of contract and tortious acts alleged herein, occurred in, and resulted in damages, within this judicial district.

## GENERAL ALLEGATIONS

### LGM, Damier and Damier Media's Background and Introduction

8.     LGM owns and operates some of the most highly engaged communities on social media.  Its social media communities have had in excess of one billion views per month, ten million followers and with most of the views and followers comprised of the coveted Millennial and Generation Z audience.  LGM also produces promotion campaigns.  LGM has worked with high-profile brands

2804945

interested in reaching a Millennial and Generation Z audience such as Chipotle, Puma, Ruffles and Old Spice.  LGM's co-founders included billionaire Mark Cuban.

9.     One of the social media communities operated by LGM is @NFT, a community on Instagram and Twitter.  The @NFT social media community is based on NFTs, which are non-fungible tokens.  In layman's terms, NFTs are unique digital assets that utilize the same blockchain technology as cryptocurrencies.  However, unlike digital currencies such as Bitcoin, NFTs are unique digital assets whereby, for example, an artist can sell a verified authentic digital version of a painting as a digital jpeg file.

10.    Defendant Damier at one point managed the Facebook site for Mark Cuban and now runs a company called Damier Media.  According to statements of information filed with the California Secretary of State, Damier is the Chief Executive Officer, Secretary, Chief Financial Officer and sole director of Damier Media.  The statements of information alternately describe Damier Media's business as a marketing agency or investments and consulting.  Damier Media and/or Damier have created Instagram and Twitter accounts related to historical images including History in Pictures (@historyphotographed) and Moments in History (@momentsinhistorynft).

11.    Moments in History has been referred to as a means to create a digital history museum in the "metaverse" (the metaverse is generally described as an immersive digital world that can be viewed through virtual reality or augmented reality technology) containing NFT versions of artwork (verified authentic digital images of paintings and other artwork).  The Damier Media website describes Moments in History as "a Metaverse project that will expand our history ecosystem, capitalizing on the enormous potential of Web 3.0, the blockchain, and the content creator economy.  We are intoxicated by the community-building potential offered by NFTs and digital asset ownership.  However, Moments In History isn't just an NFT project.  It's not a get-quick rich (sic) scheme.  It is a family. It's a community

-4-

2804945

of like-minded, passionate, innovative, and curious individuals, united by their shared love of history, and the ways in which our lives have been forged by the events of the past.  Our long-term goal is to collaborate with iconic businesses, projects and people that wish to enter the metaverse, allowing them to digitize and commercialize their IP in new ways."

12.    A separate website for Moments in History (http://momentsinhistory.io) refers to Moments in History as a business entity with its own president, stating:

> History Photographed is a social media community founded and operated by Eric Damier, the President of Moments in History…

That website states that:

> Moments in History is the next evolution of the History Photographed ecosystem.  It is a metaverse project that will expand our history ecosystem, capitalizing on the enormous potential of Web 3.0, the blockchain, and the content creator economy.  We are intoxicated by the community-building potential offered by NFTs and digital asset ownership.  However, Moments in History isn't just an NFT project.  It's not a get-quick rich [sic] scheme.  It is a family.  It's a community of like-minded, passionate, innovative, and curious individuals, united by their shared love of history, and the ways in which our lives have been forged by the events of the past.  Our long-term goal is to collaborate with iconic businesses, projects and people that wish to enter the metaverse, allowing them to digitize and commercialize their IP in new ways.  We are dedicated to democratizing history—to giving unique, immersive historical experiences to people around the world, not just to those that can visit museums.

13.    LGM is informed and believes and based thereon alleges that Damier Media and Damier's NFT projects such as Moments in History make money when selling NFTs and through other sources.  Also, LGM is informed and believes and based thereon alleges that future revenue streams potentially include the sale of passes or tickets to access virtual museums in the metaverse to view the NFTs and engage in interactive discussions about the NFTs and history.

2804945

14.     On October 12, 2021, Damier sent an e-mail to Mark Cuban, one of the co-founders of LGM, and at that time an investor in LGM, stating "Hey mark, wondering if you can make an intro to the founder of @NFT."  LGM is informed and believes, and based thereon alleges, that Damier requested the introduction in order to create a business relationship with LGM in order to obtain marketing and/or promotion services for Moments in History and other projects of Damier and Damier Media.

15.     On October 13, 2021, Mark Cuban sent an e-mail to Damier and Jason Falovitch ("Falovitch") introducing them to each other.  Falovitch and Aaron Avruskin ("Avruskin"), together with Cuban, are the co-founders of LGM. Falovitch and Avruskin are the officers of LGM as of the filing of this Complaint. Cuban was previously an investor in LGM, but, as of the filing of this Complaint, is no longer an investor in LGM.

### The Agreement Between LGM, Damier Media and Damier

16.     Following communications between LGM and Damier as to how they could work together by using LGM's services to promote Damier Media and/or Damier's Moments in History NFT sales, in or about December 2022, LGM sent a one-page written agreement to Damier in relation to NFTs titled "@NFT—Social Publishing IO" (the "Agreement").  LGM and Damier executed the Agreement on or about December 30, 2021.  A true and correct copy of the Agreement is attached hereto as **Exhibit A**.  The term "IO" in the Agreement refers to an insertion order, which is an agreement to run a promotion campaign on social media sites and the specifications including such items as the nature and date of the promotions, the platforms and the pricing structure.

17.     The Agreement has an effective date of December 28, 2021 with the advertiser "Moments in History % Eric Damier", the promoted brand "Moments in History" and the channel "@NFT."  The program description is for "4x @NFT IG Featured Feed Post incl Project Description posted in Prime Time", "2x @NFT IG

Story Post with a swipe uplink", "4x @NFT Twitter Post", "4x @NFT Discord Feature", "4x @NFT Newsletter Blasts", "1 Link in Bio for 12h / 1 Follow for 12h". "1PFP change for 12h / 1 IG Live / 1 Spaces" and "1 Clubhouse." The media sources listed were "Instagram + Platforms listed in program description", which included Instagram, Twitter, Discord and Clubhouse. The above shorthand references refer to posting and interaction through social media. The compensation due from Damier to LGM was for "20% of Mint sales for 6666 NFT's payable in ETH" and with payment "Payable in full on execution of this IO." The Agreement described a 20% commission on the NFT sales, payable in the digital currency known as Ethereum (ETH).

18.     Based on the Agreement, LGM promoted Damier Media and/or Damier's sale of digital artwork through social media posts and discussions regarding the sale of NFTs on social media platforms including but not limited to: (a) Instagram; (b) Discord; and (c) Clubhouse. The services delivered by LGM included: (a) three Discord "blasts"; (b) two Instagram stories; (c) two Instagram feed posts; (d) a profile picture (PFP) change between January 10-13, 2022 (the PFP was for three days even though LGM only agreed to the PFP for twelve hours, with LGM thereby providing additional benefits for an additional two-and-a-half days); (e) a link in the @NFT biography between January 10-13, 2022 (the link was included for three days even though LGM only agreed to post the link for twelve hours, with LGM thereby providing additional benefits for an additional two-and-a-half days); (f) one Clubhouse chat; (g) one Instagram Live; and (h) a Newsletter "blast." True and correct copies of LGM's promotions of the sale of digital artwork through social media are attached hereto as **Exhibit B** and are incorporated herein by reference.

19.     LGM was unable to also promote the sale through its Twitter account because LGM's Twitter account, @NFT, was suspended based on what Twitter asserted was a violation of the Terms of Service. The alleged violation of the Terms

of Service was unrelated to LGM's business and was instead based on an alleged sale, purchase, trade or offering the sale, purchase or trade of a Twitter account or username.  LGM is informed and believes and based thereon alleges that Twitter's allegation of a violation of its Terms of Service related to Mark Cuban's association with the National Foundation for Transplants and acquisition of the @NFT account from the foundation by Cuban.  Cuban later licensed the @NFT account to LGM for which Cuban was a 50% owner through a Delaware registered entity, Radical Investments LP, to rebrand the account and permit LGM the ability to: (a) use the @NFT account for LGM's business; and (b) for Cuban and LGM to promote the foundation.[1]  LGM therefore fulfilled its obligations as to promoting the NFT sale on social media through the agreed-upon channels except for Twitter, and as to Twitter, the issue was outside of LGM's ability to control.

20.     On or about January 12, 2022, the Moments in History NFTs listed for sale by Damier Media and/or Damier sold out and resulted in gross sales of approximately $1.5 million (the sales were in the cryptocurrency known as Ethereum, but approximately $1.5 million based on the Ethereum to U.S. Dollars conversion rate that day).  LGM is informed and believes and based thereon alleges that the successful sale was based, in part, on LGM's social media promotion services of the sale of digital artwork.  Based on the sales of NFTs, pursuant to the Agreement, LGM was entitled to receive a commission of 20% of the gross sales. The sales were for .07 Ethereum (ETH is a cryptocurrency) ("ETH") for each NFT multiplied by 6,666 NFTs sold.  The gross sales on the NFT sale were therefore 466.62 ETH (6,666 x .07), which equated to $1,573,563.96 U.S. Dollars ($3,372.26

---

[1] LGM has disputed the suspension during early 2022 Cuban and Falovitch communicated with Twitter regarding the suspension. LGM is informed and believes and based thereon alleges that many companies have sold and/or transferred Twitter "@" handles without any action from Twitter but that the @NFT handle has significant value given the market for NFTs.  LGM is informed and believes and based thereon alleges that third parties may have taken actions to disrupt LGM's ongoing business and value, including but not limited to its @NFT Twitter and Instagram accounts, in order to obtain the benefits from a disruption in LGM's business.

-8-

was the closing price of Ethereum on January 12, 2022 x 466.62 ETH) on the date of the sale based on the conversion rate of ETH to U.S. dollars as of the sale date. Based on LGM's Twitter account being suspended and LGM's resulting inability to post regarding the NFTs on Twitter, LGM recognizes that Damier Media and Damier are entitled to a discount on the amount due as specified in the Agreement that is commensurate with providing all the other social media promotion services other than through Twitter and with the resulting successful sale of the NFTs.

21.    On or about January 11, 2022, following the successful sale of NFTs, Damier texted Falovitch that "[w]ell [sic] go over accounting tomorrow and let's jump on a call" and "Need to figure out how we're gonna adjust the agreement since Twitter was a big part of it and we didn't get those items."  A true and correct copy of the text message is attached hereto as **Exhibit C** and is incorporated herein by reference.

**Damier's Default, Discussions Between LGM and Damier Following the Default and Express or Implied Threats Made by Damier and Damier Media Intended to Prevent LGM from Seeking to Collect on the Amounts Due**

22.    Notwithstanding the Agreement and Damier's text message on January 11, 2022 to go over an accounting and to determine how to adjust the amount due in the Agreement based on LGM's inability to post on Twitter, Damier Media and Damier refused to pay the amount due and refused to pay anything to LGM other than a small portion of the amount due.

23.    LGM, through its officers, Falovitch and Avruskin, thereafter exchanged numerous text messages with Damier and participated in a phone call with Damier in regard to the past-due amounts owed to LGM.

24.    In the week following the successful NFT sale, Damier attempted to negotiate with LGM as to the amount due, seeking to reduce the 20% commission to an 8% commission.  On or about January 18, 2022, Damier sent a text message to

Falovitch stating "[w]as gathering the full info on this.  Here's a broken down version of what we got.  the big-ticket items were the 4 IG posts and 4 twitter posts. Only 3 of the 8, or 38%, were delivered.  Of the minor items: The Twitter Spaces was not hosted.  That was a big one we were really looking forward to.  Only 2 of the 4 Discord were posted.  The IG PFP & Link in Bio were not released 12 hours before mint.  They were released much closer to mint and only left for about 8 hours.  The IG Live was done but it was extremely short, running at ~15 minutes. Clubhouse had just 100 listeners and most were from our server.  No NFT Newsletter was sent out  The 2x NFT IG stories were released as planned.  The total Eth made from the 6,666 NFTs was 464.  What is fair and are willing to pay 8%, or 37.33 Eth."  Follow-up text messages from Damier stated "I'm not trying to insult you by any means.  We're going based on what was offered and what we received. Imagine walking into rolls royce ordering a car and then delivering it to you without wheels and engine?" and "You would just pay the full price because it's rolls royce?"  True and correct copies of the text messages are attached hereto as **Exhibit D** and is incorporated herein by reference.

25.     Approximately one month after the NFT sale, during February 2022, Damier stopped negotiating, did not offer any commission to LGM and became hostile, including making veiled threats to LGM and its co-founders and owners.  In responding to Avruskin's text message that services were provided, Damier responded "[t]hat's your opinion."  Damier's text messages also included such statements as "[d]o me a favor don't ever call me without requesting and confirming a time to call first or you will get blocked", "I told Jason and I'll tell You these same you don't want enemies in this space.  Specially with guys like me."  Another text stated "I don't know what got into you yesterday that you decided to text me.  Not a good idea."  In regard to Damier's default under the Agreement, Damier wrote "[t]here's nothing to discuss.  You both are bad actors.  You know it, everyone knows it" and "I've been in touch with mark Cuban", "I've been in talk [sic] with

Mark Cuban   I'm the last guy you want to have issues with."  True and correct copies of the screenshots of the text messages are attached hereto as **Exhibit E** and are incorporated herein by reference.

26.     Damier's text messages to Avruskin on behalf of LGM also amounted to civil extortion, making veiled threats in regard to screenshots of content that Damier believed would harm LGM and/or its officers and owners.  When Avruskin responded asking Damier "[s]o you're not going to live up to the agreement, and you want to make threats", Damier responded stating "I'm not making threats" but that "I'm stating that You don't need more enemies.  You guys have plenty of people coming after you."  True and correct copies of the screenshots of the text messages are attached hereto as **Exhibit F** and are incorporated herein by reference.

27.     When Avruskin responded to Damier stating "I'm not looking to make enemies, I'm looking to settle a business matter amicably—I've always been amicable with you, Damier responded with threats that amounted to civil extortion, stating "[d]o you recall the messages you sent projects telling them not to disclose your involvement in their project.  Those screen shots exist" and "[d]o you recall?  You claimed to now [sic—a follow up text clarifies that "now" should be "not"] know about things that happened but screen shots going around says otherwise", "[s]ave yourself the headache" and "[t]ake all that money you guys made and go chill somewhere for a while.  Stay as low key as possible."  True and correct copies of the screenshots of the text messages are attached hereto as **Exhibit G** and are incorporated herein by reference.  LGM is informed and believes and based thereon alleges that Damier was threatening to release information and/or screenshots as to LGM's involvement in an unrelated project that Damier believed would be damaging to LGM and its owners if LGM did not walk away from seeking the amounts due under the Agreement.

28.     LGM is informed and believes and based thereon alleges that Damier and Damier Media's statements in the text messages above that "[y]ou both are bad

-11-

actors.  You know it, everyone knows it" and "[y]ou don't need more enemies.  You guys have plenty of people coming after you" were based on a *Rolling Stone* article published on or about February 4, 2022 that discussed a Twitter user, @topshotfund, having made allegations as to LGM's @NFT Twitter feed in regard to purportedly promoting NFT projects without proper disclosures regarding the posts.  LGM is informed and believes and based thereon alleges that Damier and Damier Media used the allegations in the *Rolling Stone* article as a basis for threatening the disclosure of other purportedly wrongful acts by LGM if LGM attempted to collect amounts due under the Agreement.  As alleged hereinabove, although the *Rolling Stone* article infers that LGM's Twitter account, @NFT, was suspended based on the allegations by @topshotfund, Twitter's reason for the suspension provided to LGM was unrelated to the manner in which LGM utilized the account and instead related to Mark Cuban's acquisition of the @NFT handle.

29.    On or about March 3, 2022, the law firm of Quinn Emanuel, on behalf of LGM, sent a letter to Damier demanding amounts due.

30.    Neither Damier nor Damier Media responded to the letter from Quinn Emanuel dated March 3, 2022.

31.    On or about March 31, 2022, Quinn Emanuel, on behalf of LGM, sent a follow-up demand letter to Damier.

32.    Neither Damier nor Damier Media responded to the letter from Quinn Emanuel dated March 31, 2022.

33.    Damier and Damier Media have not paid LGM any amounts due under the Agreement as of the date of the filing of this Complaint.

**Amounts Due and Owing by Damier Media and Damier**

34.    As of the date of this Complaint, the current amount due and outstanding from Damier Media and Damier to LGM is $314,712.79 (20% of the gross sales of 466.62 ETH, which equated to $1,573,563.96 U.S. Dollars as of January 12, 2022), plus interest.  LGM also seeks compensatory and punitive

2804945

damages based on Damier's wrongful, unlawful and tortious acts alleged herein including the Damier's specific threats in regard to screenshots of content that Damier believed would harm LGM and/or its officers and owners if they pursued collecting amounts due under the Agreement.

### FIRST CLAIM FOR RELIEF

**(Breach of Written Contract—Against All Defendants)**

35.     LGM  re-asserts the allegations set forth above, as though set forth in full herein.

36.     LGM, Damier Media and Damier entered into the Agreement on or about December 30, 2021.

37.     LGM has fully satisfied all of the conditions precedent, except those that have been excused, and have satisfied all other obligations under the Agreement with the exception of LGM's inability to post on Twitter because LGM's Twitter account was suspended through no fault of its own.  LGM is informed and believes and based thereon alleges that Damier and Damier Media conducted a successful sale of NFTs in part based on the promotional activities of LGM pursuant to the Agreement.

38.     Damier breached the Agreement by failing to pay the amounts due under the Agreement.

39.     As a direct and proximate result of Damier and Damier Media's breach of the Agreement, LGM suffered losses and damages in an amount to be proven at trial, but believed to exceed $314,712.79.

40.     As of the date of the filing of this Complaint, the current amount due and outstanding pursuant to the Agreement is $314,712.79 (466.62 Ethereum x 20% commission, which equates to $314,712.79 on the date of the sale of the NFTs), plus interest.

///

///

2804945

**<u>SECOND CLAIM FOR RELIEF</u>**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing—**

**Against All Defendants)**

41.     LGM  re-asserts the allegations set forth above, as though set forth in full herein.

42.     LGM, Damier Media and Damier entered into the Agreement on or about December 30, 2021.

43.     LGM performed substantially all of the significant deliverable items required by the Agreement.  LGM promoted Damier Media and/or Damier's sale of digital artwork through social media posts and discussions regarding the sale of NFTs on social media platforms including but not limited to: (a) Instagram; (b) Discord; and (c) Clubhouse.  The services delivered by LGM included: (a) three Discord "blasts"; (b) two Instagram stories; (c) two Instagram feed posts; (d) a profile picture (PFP) change between January 10-13, 2022 (the PFP was for three days even though LGM only agreed to the PFP for twelve hours, with LGM thereby providing additional benefits for an additional two-and-a-half days); (e) a link in the @NFT biography between January 10-13, 2022 (the link was included for three days even though LGM only agreed to post the link for twelve hours, with LGM thereby providing additional benefits for an additional two-and-a-half days); (f) one Clubhouse chat; (g) one Instagram Live; and (h) a Newsletter "blast."  As set forth in the general allegations, LGM was unable to post on its Twitter account based on the suspension of the account during the applicable time period.

44.     The conditions required for Damier and Damier Media's performance occurred given that LGM provided the services agreed to in the Agreement, with the exception of posting on Twitter, and the resulting successful sale of the NFTs following LGM providing its services to Damier and Damier Media.

45.     Damier and Damier Media unfairly interfered with LGM's rights to receive the benefits of the Agreement, withheld the benefits of the Agreement from

-14-

LGM, and the withholding of benefits was unreasonable or without proper cause. Damier and Damier Media refused to pay the 20% commission in the Agreement, later stated that they would only pay an 8% commission, and then refused to pay any commission to LGM based on the services rendered by LGM pursuant to the Agreement.  Rather, as set forth in the general allegations, Damier and Damier Media made veiled threats that amounted to civil extortion when LGM attempted to obtain payment for the services rendered.

46.     As a direct and proximate result of Damier's and Damier Media's conduct, LGM suffered losses and damages in the amount to be proven at trial, but in an amount not less than $314,712.79.

## THIRD CLAIM FOR RELIEF

### (Unfair Business Practices—California Business and Professions Code § 17200—Against All Defendants)

47.     LGM re-asserts the allegations set forth above, as though set forth in full herein.

48.     Damier and Damier Media have engaged in unlawful business acts or practices and/or unfair business acts or practices within the meaning of California Business and Professions Code § 17200 by entering into the Agreement, and, after LGM attempted to obtain payment for the services rendered based on the Agreement, Damier and Damier Media made veiled threats and engaged in civil extortion or borderline civil extortion by making such statements as "I'm stating that You don't need more enemies.  You guys have plenty of people coming after you", "[d]o you recall the messages you sent projects telling them not to disclose your involvement in their project.  Those screen shots exist" and "[d]o you recall?  You claimed to now [sic—a follow up text clarifies that "now" should be "not"] know about things that happened but screen shots going around says otherwise", "[s]ave yourself the headache" and "[t]ake all that money you guys made and go chill somewhere for a while.  Stay as low key as possible."  LGM is informed and

-15-

believes and based thereon alleges that Damier was threatening to release information and/or screenshots as to LGM's involvement in an unrelated project that Damier believed would be damaging to LGM and its owners if LGM did not walk away from seeking the amounts due under the Agreement.

49.     The unlawful business acts or practices by Damier and Damier Media were unlawful within the meaning of California Business and Professions Code § 17200 based on the civil extortion engaged in by Damier and Damier Media when LGM attempted to obtain payment on amounts due under the Agreement, including but not limited to acts contrary to 18 U.S.C. § 1951(a) and (b)(2) and California Penal Code §§ 518-519 and 523(a).  As a result of this practice, Damier and Damier Media obtained ill-gotten gains, including the amounts owed by Damier Media and Damier to LGM based on the Agreement.  Damier and Damier Media knew that they were not entitled to keep the amounts that were owed to LGM and nevertheless sent text messages that were intended to exploit the fear of economic loss through the disclosure of materials that Damier and Damier Media inferred would be damaging to LGM, its business and its reputation, and were a wrongful use of fear. By seeking payment to LGM for services rendered, LGM had a right to be free from Damier and Damier Media's threatened disclosure of materials that Damier and Damier Media inferred would be damaging to LGM, its business and its reputation.

50.     The unfair business acts or practices by Damier and Damier Media were unfair, including by violating public policy by obtaining a financial benefit from making veiled threats of the disclosure of materials that Damier and Damier Media inferred would be damaging to LGM, its business and its reputation.

51.     As a direct and proximate result of Damier's unfair business practices, LGM suffered losses and damages in the amount to be proven at trial, but in an amount not less than $314,712.79.

52.     As a result of Damier and Damier Media's unfair business practices, LGM has suffered injuries and has incurred losses and damages in the amount to be

1  proven at trial, but in an amount not less than $314,712.79, and that LGM is entitled

2  to restitution in that amount.

3  **FOURTH CLAIM FOR RELIEF**

4  **(Civil Extortion—Against All Defendants)**

5      53.    LGM re-asserts the allegations set forth above, as though set forth in

6  full herein.  After LGM attempted to obtain payment for the services rendered based

7  on the Agreement, Damier and Damier Media made specific threats and engaged in

8  civil extortion by making such statements as "I'm stating that You don't need more

9  enemies.  You guys have plenty of people coming after you", "[d]o you recall the

10 messages you sent projects telling them not to disclose your involvement in their

11 project.  Those screen shots exist" and "[d]o you recall?  You claimed to now [sic—

12 a follow up text clarifies that "now" should be "not"] know about things that

13 happened but screen shots going around says otherwise", "[s]ave yourself the

14 headache" and "[t]ake all that money you guys made and go chill somewhere for a

15 while.  Stay as low key as possible."  LGM is informed and believes and based

16 thereon alleges that Damier was threatening to release information and/or

17 screenshots as to LGM's involvement in an unrelated project that Damier and

18 Damier Media believed would be damaging to LGM and its owners if LGM did not

19 walk away from seeking the amounts due under the Agreement.

20     54.    Damier and Damier Media engaged in civil extortion including but not

21 limited to engaging in acts contrary to 18 U.S.C. § 1951(a) and (b)(2) and California

22 Penal Code §§ 518-519 and 523(a) when LGM attempted to obtain payment on

23 amounts due under the Agreement.  Damier and Damier Media knew that they were

24 not entitled to keep the amounts that were owed to LGM and nevertheless sent text

25 messages that were intended to exploit the fear of economic loss through the

26 disclosure of materials that Damier and Damier Media inferred would be damaging

27 to LGM, its business and its reputation, and Damier and Damier Media wrongfully

28 and unlawfully attempted to intimidate LGM through fear, intimidation and

-17-

blackmail.  By seeking payment to LGM for services rendered, LGM had a right to be free from Damier and Damier Media's threatened disclosure of materials that Damier and Damier Media inferred would be damaging to LGM, its business and its reputation.  As a result of this practice, Damier and Damier Media obtained ill-gotten gains by keeping the amounts owed by Damier Media and Damier to LGM based on the Agreement rather than paying the amount to LGM, and by using the threat of fear of disclosure to prevent LGM from obtaining what it was owed. Damier and Damier Media's text messages expressing or implying threats, including that Damier or Damier Media would expose or impute to LGM or its officers and owners a deformity or disgrace or to expose a secret, constituted fear used to induce LGM to not attempt to collect on amounts due to it.

55.     As a direct and proximate result of Damier's civil extortion, LGM suffered losses and damages in the amount to be proven at trial, but in an amount not less than $314,712.79.

56.     Additionally, in engaging in the acts alleged herein, Damier and Damier Media acted intentionally, willfully, wantonly and with reckless disregard of LGM's rights and with actual malice, oppression, and fraud.  As such, Damier and Damier Media are subject to punitive damages based on their wrongful actions toward LGM.

WHEREFORE, LGM prays for:

<u>As To the First Claim for Relief</u>

1.     Damages as permitted by law and in an amount to be proven at trial;

<u>As To the Second Claim for Relief</u>

2.     Damages as permitted by law and in an amount to be proven at trial;

<u>As To the Third Claim for Relief</u>

3.     Damages as permitted by law and in an amount to be proven at trial;

4.     Restitution as permitted by law and in an amount to be proven at trial;

5.     Injunctive relief;

As To the Fourth Claim for Relief

6.     Damages as permitted by law and in an amount to be proven at trial;

7.     Punitive damages, according to proof;

As To All Claims for Relief

8.     The costs of suit incurred;

9.     Interest at the maximum legal rate; and

10.    Such other and further relief as this Court deems just and appropriate.

Dated:  June 9, 2022                           BG LAW LLP


By: _____
         COREY R. WEBER
         Attorneys for Plaintiff, Social Game Media,
         Inc. dba Leverage Game Media



## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands, pursuant to Rule 38 of the Federal Rules of Civil Procedure, a trial by jury of all issues so triable.


Dated:  June 9, 2022                           BG LAW LLP


By: _____
         COREY R. WEBER
         Attorneys for Plaintiff, Social Game Media,
         Inc. dba Leverage Game Media

2804945

# EXHIBIT A

## @NFT – Social Publishing IO

### Program Description

| | |
|---|---|
| Effective Date: | Thursday, December 28, 2021 |
| Advertiser: | Moments In History % Eric Damier |
| Channel: | @NFT |
| Program Description: | 4x @NFT IG Featured Feed Post incl Project Description posted in Prime Time |
| | 2x @NFT IG Story Post with a swipe uplink |
| | 4x @NFT Twitter Post |
| | 4x @NFT Discord Feature |
| | 4x @NFT Newsletter Blasts |
| | 1 Link in Bio for 12h / 1 Follow for 12h |
| | 1PFP change for 12h / 1 IG Live / 1 Spaces |
| | 1 Clubhouse |
| Promoted Brand: | Moments in History |
| Posting Date(s): | TBD by both parties via email |
| Media: | Instagram + Platforms listed in program description |
| Authorized Re-post(s): | Yes |
| Compensation/Fee Wallet Address: | 20% of Mint sales for 6666 NFT's payable in ETH |
| | 0xf1E89Ef2ABa302C5FD63f7fa007D8334f228ADE3 |
| Payment Schedule: | Payable in full on execution of this IO |
| Approvals: | Notwithstanding the execution of this IO, The Channel retains the right to approve any/all materials. The Advertiser acknowledges that any unwillingness to post the provided materials in no way constitutes or may give rise to any form of liability inducing action. In the event that the Channel fails to approve the material or are unwilling to post the material, the Advertiser will have no obligation to pay the fee. For sake of clarity, the Channel may give approval via email. |

**@NFT**                                          **Moments In History / Eric Damier**

Elliot Falovitch

By: _____          By: _____
                                                            Eric Damier

**21**

X: _____

Title: ASO
      _____

X: _____

Title: **Founder/CEO** _____

# EXHIBIT B







# EXHIBIT C



# EXHIBIT D



Tue, Jan 18, 3:27 PM

Eric Moments

Was gathering the full info on this. Here's a broken down version of what we got.

the big-ticket items were the 4 IG posts and 4 twitter posts. Only 3 of the 8, or 38%, were delivered.

Of the minor items:

The Twitter Spaces was not hosted. This was a big one that we were really looking forward to.

Only 2 of the 4 Discord were posted.

The IG PFP & Link in Bio were not released 12 hours before mint. They were released much closer to mint and only left for about 8 hours.



12:41   LTE

152   EM   JF

2 People

The IG Live was done but it was extremely short, running at ~15 minutes.

Clubhouse had just 100 listeners and most were from our server.

No NFT Newsletter was sent out

The 2x NFT IG stories were released as planned.

The total Eth made from the 6,666 NFTs was 464. What is fair and are willing to pay 8%, or 37.33 Eth.





12:41

152

EM
JF

2 People

Eric Moments

I'm not trying to insult you by any means. We're going based on what was offered and what we received.

Imagine walking into rolls royce ordering a car and then delivering it to you without wheels and engine?

Jason Falovitch

Eric please, just take our name off. I can't deal with this

Eric Moments

You would just pay the full price because it's rolls royce?

Your name isn't on the project I'm not sure what you mean

**32**

# EXHIBIT E



**Fri, Feb 11, 3:41 PM**

Do me a favor don't ever call me without requesting and confirming a time to call first or you will get blocked

Pretty aggressive response there, Eric. Had you answered by calm and very fair txt, I wouldn't have. Let me know when you can talk

I was very cordial to you both and you fucked that up talking to me like I'm some fuck boy during our last texts exchanges when I was trying to communicate respectfully.

Now you and Jasón are on everyone's shit list. You guys are the fuck boys and trying to come back acting like it all good?





I don't have time right now. I'll speak ti you next week

And helpful when we last spoke, giving you insight

Ok, but services were rendered. What you laid out differs from what actually occurred, so let's simply get it settled. Not an unreasonable request on my side.

Fri, Feb 11, 5:01 PM

That's your opinion

Did you not read what Jasón the founder and CEO of your company said during our last conversation

Can you send me screen shots of what you guys posted? "Services rendered" and explain why you deleted the services "rendered"



12:42

LTE

EM

Eric ›

You revoked services when you deleted without our authorization or even written notice

I don't know what got into you yesterday that you decided to text me.

Not a good idea

Eric, stop. I could counter with the fact you violated our agreement first by failing to pay.
Simply put, do you intend to negotiate in good faith to sort this out and provide compensation for services rendered, or not?

There's nothing to discuss. You both are bad actors. You know it, everyone knows it

Stop making enemies in the space man



You fail to deliver what you agreed to and when we brought it up to your attention you went off left field

I've been in touch with mark Cuban

So the answer is no then? You don't intend to fulfil your obligation and our agreement in any fashion?

I've been in talk with mark Cuban

I'm the last guy you want to have issues with

**38**

# EXHIBIT F



# EXHIBIT G





**43**



Release?

Screen shots going around doesn't mean I have those screenshots. I've seen them but not my place

Anyway I'm gonna have lunch

I would appreciate if you stop harassing me

I don't see any relevance here. Why do you keep avoiding my question. Are we going to negotiate or not?

Have a good weekend

And good luck to you guys

**44**